668 S.E.2d 402

**In the Matter of Clyde L. PENNINGTON, Jr., Respondent.**

No. 26551.

Supreme Court of South Carolina.

Heard Aug. 20, 2008.

Decided Oct. 13, 2008.

50

52

Lesley M. Coggiola, Disciplinary Counsel, and Barbara M. Seymour, Deputy Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

Robert W. Dibble, Jr., of McNair Law Firm, of Columbia, for Respondent.

PER CURIAM:

In this attorney disciplinary proceeding, the Commission on Lawyer Conduct filed formal charges against Respondent under the Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR, with regard to four matters. Respondent entered into stipulations of fact on these initial matters. At the disciplinary hearing, the record was kept open pending the resolution of two new matters, and the Commission ultimately filed additional charges for the new matters. By consent order, the parties agreed the new allegations could be decided on the pleadings. Thereafter, a subpanel of the Commission issued a report recommending that Respondent be suspended

indefinitely from the practice of law, that he be required to pay the costs incurred in this disciplinary proceeding, and that an attorney be appointed to represent his clients' interests. The full panel adopted the findings of the subpanel. Respondent seeks review, challenging two of the panel's findings and arguing the sanction imposed is too harsh. We conclude Respondent shall receive a definite suspension of two years and shall be responsible for the payment of costs.

## FACTS

Respondent faced formal disciplinary charges in connection with the following six matters:

### Matter I

Respondent was hired to help a separating couple obtain a custody arrangement with relatives that would allow their child to stay within his current school district until the end of the school year. Respondent later represented the husband in his separation and his divorce. A custody dispute subsequently arose when the relatives wanted to retain custody of the couple's child and a consent order was improperly filed granting full custody to the relatives. Respondent admittedly did not review the clocked copy of the consent order regarding custody and did not advise the parties regarding a conflict of interest. Further, he failed to timely respond to the complaint in this matter or to respond to the notice of full investigation. The subpanel concluded Respondent had violated the following Rules of Professional Conduct contained in Rule 407, SCACR: Rule 1.1 (Competence); Rule 1.3 (Diligence); Rule 1.7 (Conflicts of Interest); and Rule 8.1 (Disciplinary Matters).

### Matter II

Respondent admits that he failed to respond to the initial inquiry from the Office of Disciplinary Counsel (ODC), the *Treacy*[1] letter, and the notice of full investigation in this matter. No other allegations of misconduct remain. The

---

1. *In re Treacy*, 277 S.C. 514, 290 S.E.2d 240 (1982). A *Treacy* letter "point[s] out that the failure to respond to ODC constitutes sanctionable conduct." *In re Cabaniss*, 369 S.C. 216, 217, 632 S.E.2d 280, 281 (2006).

subpanel concluded Respondent violated Rule 8.1 (Disciplinary Matters) of the Rules of Professional Conduct, Rule 407, SCACR.

## Matter III

Respondent stipulated to the following facts. Respondent represented a client in a civil matter that was originally filed by another attorney. Respondent failed to act with diligence in obtaining an order of substitution. Once substituted, he entered into a verbal agreement with opposing counsel that he would not respond to discovery requests until a motion for partial summary judgment was resolved, but he did not confirm this in writing or advise his client of the alleged agreement. Respondent also failed to file a reply to the motion for partial summary judgment, although he attended the hearing. After partial summary judgment was granted against the client, the client asked Respondent to file an appeal. Respondent told the client that she should find another attorney for the appeal because he did not handle appellate work and his fee arrangement limited the scope of his representation. The client told Respondent that she did not think she could get another attorney. The client later filed a *pro se* notice of appeal with the South Carolina Court of Appeals while Respondent was hospitalized. Respondent filed a motion to be relieved as counsel in which he stated the client had "proceeded on her own without the advice or knowledge of counsel." He also had the client sign a release stating she had no complaint about him, although the client had a grievance pending against him at the time. Respondent later moved to be relieved from the remainder of the circuit court case that had not been disposed of by partial summary judgment and he did not respond to the client's inquiries about the case or to the client's request for a refund of attorney's fees.

Respondent did not respond to the initial inquiry in this matter from ODC, the *Treacy* letter, or the notice of full investigation. The subpanel found Respondent had violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.1 (Competence); Rule 1.2 (Scope of Representation); Rule 1.3 (Diligence); Rule 1.4 (Communication); Rule 1.8(h) (Prohibited Transactions); Rule 3.3 (Candor to the Tribunal); Rule 8.1 (Disciplinary Matters); Rule 8.4(d) (Dishonesty,

Fraud, Deceit, or Misrepresentation); and Rule 8.4(e) (Conduct Prejudicial to the Administration of Justice).

With regard to Rules 1.1, 1.2, 1.3, and 1.4, the subpanel noted Respondent admitted he failed to diligently pursue portions of the client's case and to adequately communicate with her, and he admitted he failed to comply with requests for information from ODC. The subpanel found Respondent violated Rule 1.8(h) when he presented the client a document containing language absolving him of liability for his representation and asked her to sign it without independent representation. With regard to Rule 3.3, the subpanel stated, "[W]e find it likely that Respondent mischaracterized the grounds for his motion to be relieved in [the client's] appeal as her conduct in proceeding 'on her own without the advice or knowledge of counsel' when[ ] she was likely proceeding on Respondent's advice and with his knowledge."

*Matter IV*

Respondent represented a client in a divorce matter in which opposing counsel served Respondent with a counterclaim and a subpoena for medical records. At the disciplinary hearing, Respondent stated he had or assumed he had responded to the counterclaim and the subpoena. The documents were not in the client file and Respondent left the hearing agreeing to locate the documents and send them to ODC.

A reply and two letters addressed to opposing counsel were subsequently faxed to ODC by Respondent's secretary. The three documents were not signed by Respondent. ODC challenged the authenticity of the documents. Respondent admitted the documents were fabricated and backdated, but stated he believed his secretary might have fabricated the documents as an act of revenge.

After reviewing the evidence, including the fact that Respondent had admitted the documents sent to ODC were fabricated, the subpanel concluded that regardless of whether the documents were personally fabricated by Respondent or someone else, the documents came from Respondent's office on his letterhead and he was responsible for their submission to ODC. The subpanel explained: "We may be unable to

determine that ODC has proved Respondent fabricated the documents, however, the totality of the evidence presented makes it difficult for us to free the Respondent from any responsibility."

The subpanel stated Respondent had admitted that his conduct did not comply with his ethical obligations under the Rules of Professional Conduct, Rule 407, SCACR, citing Rule 5.3 (Responsibilities Regarding Non–Lawyer Assistants) and Rule 8.1 (Disciplinary Matters). The subpanel further found that, based on Respondent's level of involvement in the fabrication of documents sent to ODC, he had violated Rule 8.4(d) (Dishonesty, Fraud, Deceit, or Misrepresentation) and Rule 8.4(e) (Conduct Prejudicial to the Administration of Justice).

### Matter V

A client hired Respondent to represent him in a domestic matter and to assert a malpractice action against a prior attorney who had handled the case. Respondent obtained a favorable outcome for the client in the domestic matter, but he admitted that he failed to competently and diligently pursue the malpractice claim and that he should have moved to withdraw from the malpractice case. Respondent conceded that, among other things, he failed to respond to discovery requests, to a motion to compel discovery, and to requests from the court regarding the status of the case. He also failed to respond to a motion for summary judgment and to attend a hearing on the motion, to advise the client that summary judgment had been granted, and to file an appeal.

The subpanel found that Respondent had admitted in his answer sufficient facts to support the conclusion that he had violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.1 (Competence); Rule 1.3 (Diligence); Rule 1.4 (Communication); Rule 1.5 (Fees); Rule 3.1 (Meritorious Claims and Contentions); Rule 3.2 (Expediting Litigation); Rule 3.4(c) (Disobedience of Obligation under the Rules); and Rule 3.4(d) (Failure to Comply with Discovery Requests).

### Matter VI

Respondent admitted that he settled a client's claims without withholding or paying the costs and fees owed under a lien to a prior attorney who handled the matter, despite receiving

notice of the lien from the prior attorney and a copy of the client's signed acknowledgement of the obligation. The subpanel concluded Respondent violated Rule 1.15 (Safekeeping Property) of the Rules of Professional Conduct, Rule 407, SCACR.

After establishing the rules that had been violated by Respondent, the subpanel considered both mitigating and aggravating circumstances before determining the appropriate sanction to recommend for Respondent.

In mitigation, the subpanel considered the testimony of Respondent's two character witnesses, a bailiff at his local courthouse and a detective with a local police department. Both witnesses testified that, in their opinions, Respondent was an honest, law-abiding citizen.

In aggravation, the subpanel considered three factors: (1) the egregiousness of some of the rule violations, (2) the apparent pattern of other rules violations, and (3) Respondent's disciplinary history.

First, the subpanel found Respondent's misconduct involved some of the most serious violations a lawyer can commit, including allowing the fabrication of documents, making false and misleading statements, and failing to cooperate in a disciplinary investigation. Second, the subpanel found Respondent appears to have a pattern of committing some of the more routine violations, such as failing to adequately communicate with clients, to diligently pursue his clients' interests, and to provide competent representation. Third, Respondent's disciplinary history was considered the most significant factor. The subpanel noted that in 2000 he was given a letter of caution with a finding of minor misconduct and in 2001 he received an admonition. In both of the prior instances Respondent failed to cooperate in the disciplinary investigations.

After considering the foregoing, the subpanel recommended that (1) Respondent be indefinitely suspended from the practice of law, (2) Respondent be ordered to pay the costs of this proceeding, and (3) an attorney be appointed to protect the interests of Respondent's clients. The full panel adopted the findings of the subpanel.

58

**LAW**

█ In his brief, Respondent challenges two of the findings and the recommendation of an indefinite suspension.

█ "The authority to discipline attorneys and the manner in which the discipline is given rests entirely with this Court." *In re Tullis*, 375 S.C. 190, 191, 652 S.E.2d 395, 395 (2007). The Court "has the sole authority ... to decide the appropriate sanction after a thorough review of the record." *In re Thompson*, 343 S.C. 1, 10, 539 S.E.2d 396, 401 (2000). "The Court is not bound by the panel's recommendation and may make its own findings of fact and conclusions of law." *In re Hazzard*, 377 S.C. 482, 488, 661 S.E.2d 102, 106 (2008). A disciplinary violation must be proven by clear and convincing evidence. *In re Greene*, 371 S.C. 207, 216, 638 S.E.2d 677, 682 (2006); *see also* Rule 8 of Rule 413, SCACR ("Charges of misconduct or incapacity shall be established by clear and convincing evidence, and the burden of proof of the charges shall be on the disciplinary counsel.").

## I. Mischaracterization in Motion to be Relieved as Counsel.

█ Respondent first argues the panel erred in finding he violated Rule 3.3 of the Rules of Professional Conduct, Rule 407, SCACR, in Matter III by mischaracterizing the basis for his request to be relieved as counsel. In the motion he filed with the South Carolina Court of Appeals, Respondent stated the client had "proceeded on her own without the advice or knowledge of counsel." Respondent asserts the panel found the statement was true and the report on its face demonstrates that ODC failed to establish this violation by clear and convincing evidence. We agree.

The subpanel noted that the client in Matter III had filed a *pro se* notice of appeal during Respondent's hospitalization and that "Respondent did not know [the client] had done this and did not advise her about it at the time because of his medical condition." The subpanel found Respondent's statement in his motion was truthful: "We note that the statement in the motion to be relieved as counsel was true. [The client] did, in fact, proceed to actually file the appeal without the

advice or knowledge of the Respondent. He was in the hospital incommunicado at the time."

The subpanel further found, however, that Respondent did advise his client about an appeal at some point, even if he did not do so at the time the client actually filed a notice of appeal. The subpanel noted: "In fact, [the client] had received advice from Respondent that she could appeal, but that he would not be able to represent her on appeal." The subpanel concluded, and the panel agreed, that Respondent had, therefore, violated Rule 3.3 (Candor to the Tribunal): "With regard to Rule 3.3, we find it likely that Respondent mischaracterized the grounds for his motion to be relieved in [the client's] appeal as her conduct in proceeding 'on her own without the advice or knowledge of counsel' when[ ] she was likely proceeding on Respondent's advice and with his knowledge."

The subpanel's finding that Respondent "likely" mischaracterized the ground for his motion to be relieved does not meet the clear and convincing standard of proof. This is especially true in light of the fact that the subpanel found Respondent's statement that he did not know about the client's decision to proceed with a *pro se* appeal was, in fact, true. The subpanel implied that Respondent's statement was a mischaracterization because he spoke to the client about an appeal at some point, although not necessarily when she decided to proceed *pro se*. We conclude Respondent's statement simply advised the tribunal that he had no involvement in the client's filing of a *pro se* appeal and that there is no sanctionable conduct in this instance.

## II. Submission of Falsified Documents to ODC.

█ Respondent next argues the panel erred in finding he violated the Rules of Professional Conduct in Matter IV by being involved in the submission of fabricated documents to ODC. Respondent asserts (a) ODC failed to prove he fabricated the documents; (b) there was insufficient proof that he submitted the false documents to ODC; (c) the testimony of his secretary was not credible; and (d) the panel applied the wrong standard of proof in finding he violated Rules 8.4(d) and (e) of Rule 407, SCACR.

After reviewing the testimony, we find there is clear and convincing evidence that Respondent allowed the submission of falsified documents to ODC. Respondent's secretary testified in detail about the circumstances surrounding the faxing of the backdated documents to ODC. She stated Respondent sent her to the courthouse to retrieve the client's file, and when she returned Respondent told her the documents in question had "magically" appeared. Respondent asked her to sign the letters and fax them to ODC, which she did. Respondent then shredded the originals. In contrast, Respondent testified that he did not produce the documents and had no knowledge of them before they were sent to ODC as he did not review them. He stated his secretary might have fabricated the documents as a means of revenge against him.

Respondent contends the panel applied the wrong burden of proof because, in the report prepared by the subpanel, it is stated: "We may be unable to determine that ODC has proved Respondent fabricated the documents, however, the totality of the evidence makes it difficult for us to free the Respondent from any responsibility." Respondent asserts this shows a mere preponderance of the evidence standard was applied rather than a clear and convincing evidence standard. We disagree. The subpanel (and panel) found Respondent was involved in the submission of the admittedly falsified documents, regardless of whether Respondent personally prepared them.

This conclusion is supported by the following evidence relied upon by the subpanel, which noted (1) the format of the falsified letters does not match the format typically used by Respondent's secretary, such as the signature line and the initials indicating who prepared the letter; (2) the properties on the electronic version of the documents indicate they were prepared at a time when the secretary's cell phone records show she was not in the office; (3) Respondent's disciplinary history reveals a pattern of attempting to place blame on his staff for his own conduct; and (4) Respondent testified falsely regarding a number of inconsequential issues, only to retract his testimony when ODC pointed out his contrary statements in his prior appearances. Accordingly, we find there is clear and convincing evidence indicating Respondent was involved in the submission of falsified documents to ODC, which is sanctionable conduct.

## III. Appropriate Sanction.

Respondent lastly asserts the panel's recommended sanction of an indefinite suspension from the practice of law is too harsh in light of his violations and his admission of certain facts in these matters. We adopt the findings of the panel as to the determination of misconduct in each of the above matters except as to Matter III. As for Matter III, we find there does not exist clear and convincing evidence that Respondent mischaracterized the basis for his motion to be relieved as counsel and thus make no finding of misconduct in that regard.

Based on the remaining violations and the mitigating and aggravating factors, particularly Respondent's initial failure to cooperate in this proceeding, we find an appropriate sanction is a definite suspension from the practice of law for two years. Within fifteen (15) days of the date of this opinion, Respondent shall file an affidavit with the Clerk of this Court showing that he has complied with Rule 30 of the Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR (regarding the duties of an attorney following disbarment or suspension). Within thirty (30) days of the date of this opinion, Respondent shall pay the costs incurred by ODC and the Commission in the investigation of these matters.

**DEFINITE SUSPENSION.**

TOAL, C.J., WALLER, PLEICONES, BEATTY and KITTREDGE, JJ., concur.