680 S.E.2d 284

**In the Matter of David Arthur BRAGHIROL, Respondent.**

**No. 26686.**

Supreme Court of South Carolina.

Heard June 10, 2009.

Decided July 13, 2009.

Lesley M. Coggiola, Disciplinary Counsel, and Ericka M. Williams, Assistant Disciplinary Counsel, both of Columbia, for the Office of Disciplinary Counsel.

David Arthur Braghirol, of Columbia, pro se.

PER CURIAM:

In this attorney disciplinary matter, the Office of Disciplinary Counsel (ODC) filed three separate sets of formal charges against respondent, David Arthur Braghirol. After two hearings, the Panel recommended that respondent be suspended from the practice of law for six months, with conditions, and

be required to pay the costs of the proceedings. We agree a definite suspension, with conditions, is the appropriate sanction, but we impose a nine-month suspension.

## PROCEDURAL BACKGROUND

The first two sets of formal charges were filed in November 2007 and February 2008; these charges represent three separate matters. Respondent failed to answer the charges, and default orders were entered. On May 29, 2008, a hearing was held before the Panel; respondent appeared and made a statement in mitigation.

Respondent was placed on interim suspension on June 24, 2008. On June 26, 2008, ODC filed the third set of charges regarding two additional matters. Respondent again failed to respond and was held in default. The Panel held a second hearing on October 28, 2008, and subsequently issued its report finding that respondent had violated various Rules of Professional Conduct. The Panel recommended that respondent be definitely suspended for six months, retroactive to his interim suspension date of June 24, 2008. Additionally, the Panel recommended that respondent:

- be ordered to pay the award from the Resolution of Fee Disputes Board;
- be required to work with a South Carolina attorney serving as respondent's mentor for 24 months; [1]
- be required to seek psychological counseling, at his own expense, for 24 months, and submit quarterly updates from the psychologist to the Office of Commission Counsel;
- make appropriate restitution to complainants; and

---

1. The Report states that:

   The mentor's duties should include, at a minimum, regular meetings or interviews with Respondent and a monthly review of Respondent's law office practices to include Respondent's trust accounting and reconciliation practices. Respondent should be responsible for submitting quarterly reports from the mentor to the Office of Commission Counsel for the entire twenty four (24) month period.

   In addition, the Panel also recommended that the mentor assist respondent in preparing a list of the cases that he is handling so that he and the mentor could go over the list on a monthly basis.

- be ordered to pay the costs of the disciplinary proceed-
ings.

ODC objects to the six-month suspension and requests a
definite suspension for a longer time period.[2]

## FACTS

The formal charges alleged five separate matters. We also
note the various mitigating and aggravating circumstances of
this case, as well as respondent's prior disciplinary history.

### 1. Wren Matter

Respondent was appointed to represent complainant Wren
in a criminal matter. He attended a preliminary hearing at
which respondent told Wren he would return within a day or
two to meet with him. Respondent, however, failed to meet
with Wren or contact him after the preliminary hearing.
Wren wrote to respondent on three separate occasions inquir-
ing about the status of his case. Respondent failed to respond
to Wren.

Respondent was notified by the Solicitor's Office that
Wren's case was dismissed on August 4, 2006. Respondent
failed to notify Wren about the August 2006 dismissal. There
was, however, an error in Wren's discharging paperwork, and
Wren remained incarcerated until April 2007, unaware that his
criminal charges had been dismissed approximately eight
months earlier. Respondent failed to recognize the error with
the discharging paperwork or take any action to correct the
error until a copy of Wren's complaint was mailed to respon-
dent by ODC in April 2007.

Additionally, respondent failed to respond to ODC's initial
inquiries about this matter, and he failed to respond to the
notice of full investigation subsequently served upon him.

### 2. Fee Dispute Matter

The South Carolina Bar Resolution of Fee Disputes Board
("Board") ordered respondent to pay $500.00 to a former

---

**2.** ODC does **not** object to: (1) the remaining recommendations by the
Panel; and (2) any imposed sanction being applied retroactively to the
date of respondent's interim suspension.

client. Respondent failed to comply with the order of the Board. As a result, the Board issued respondent a Certificate of Non–Compliance and sent a copy to ODC on August 7, 2007.

Respondent failed to respond to ODC's repeated inquiries about this matter, and he failed to respond to the notice of full investigation subsequently served upon him. As of the May 2008 hearing, respondent still had not paid the award as ordered by the Board.

### 3. Sheppard Matter

On September 10, 2007, respondent requested the production of a criminal trial transcript from a court reporter. On September 21, 2007, the court reporter notified respondent that the transcript was complete and mailed an invoice for $229.25. In October and November 2007, the court reporter mailed respondent overdue notices. In addition, the court reporter left telephone messages with respondent. On November 30, 2007, South Carolina Court Administration mailed respondent a letter advising respondent of his overdue court reporter invoice.

ODC served a supplemental notice of full investigation, but respondent failed to respond or otherwise communicate with ODC on this matter. Respondent finally paid the court reporter in January or February 2008.

### 4. Isphording Matter

Respondent was retained in 2006 to represent complainant Isphording in a domestic action. Respondent appeared at a temporary hearing in August 2007 where he was unprepared and failed to competently represent Isphording. A child support hearing was scheduled for December 5, 2007. Respondent called the Court three hours after the hearing was scheduled to begin to report that he would not be able to attend. The hearing was continued until the following week, but respondent failed to appear for the rescheduled hearing. He also failed to notify either Isphording or the court that he could not appear for the hearing. The hearing was again continued. Respondent failed to notify Isphording of the rescheduled hearing and failed to attend the hearing. He

again failed to notify either Isphording or the court that he could not appear for the hearing.

Respondent received a notarized Financial Declaration from Isphording in January 2008 that he failed to submit to the court. As a result, the court issued a child support order without the benefit of reviewing Isphording's financial situation. Respondent failed to notify Isphording that the court had issued a child support order, and a Rule to Show Cause was issued against her in March 2008 for failure to pay the court-ordered support.

Respondent failed to keep Isphording reasonably informed of the status of her case and refused to return her telephone calls. She terminated respondent's services and requested that he return her complete client file, but respondent failed to do so and failed to refund her legal fees that were unearned by him.

Respondent failed to respond to ODC's supplemental notice of full investigation on this matter.

### 5. Glover Matter

Respondent was retained by complainant Glover in early 2004 to initiate a civil action on her behalf against Table Rock Investments, LLC. Respondent failed to keep Glover reasonably informed regarding the status of her case and failed to return her numerous phone calls. Additionally, respondent failed to safeguard Glover's property in that he informed her that he had lost all of her original documents.

In a meeting with Glover in November 2007, respondent informed her he would be settling her case for $5,000.00. Respondent, however, has had no contact with Glover since then, has failed to settle her case, and has failed to notify her that he had not settled the case. Respondent has failed to do any meaningful work on Glover's case and has failed to expedite litigation consistent with her wishes.

Respondent failed to respond to ODC's supplemental notice of full investigation on this matter.

### Mitigating Circumstances

At the May 2008 hearing, respondent testified to the Panel about his background and several extenuating circumstances

that led to his misconduct. In 2005, his 79–year–old father committed suicide in front of his mother by using a .22 pistol to shoot himself in the head. Respondent's mother called him. When he arrived, his mother was refusing to let EMS take the body away from her. Respondent was the person who cleaned the blood off the walls.

Three days later, respondent and his wife found out she was pregnant. Because of a miscarriage a few months prior, they soon had an ultrasound and discovered she was pregnant with twins. Respondent described the pregnancy as "tumultuous." The twins were born in January 2006. According to respondent, his wife suffers from depression and experienced severe post-partum depression. He stated that he was trying to "juggle" his wife's depression, the care-taking of the twins, the after-effects of his father's suicide, the needs of his 11–year–old stepdaughter, and his solo practice.

Some time after he was served the formal charges, he called his mother and requested that she take care of the two-year-old twins at her home. Additionally, after he met with disciplinary counsel for an interview, he went to a physician and found out he had type two diabetes. He was placed on medication for the diabetes, as well as anti-depressants.

Respondent also made a statement at the second hearing, which occurred in October 2008, approximately four months after he was placed on interim suspension. He told the Panel that after the first hearing, he began seeing a psychiatrist. He stated that with counseling and medication, he had "regained his strength" and he asked that he be allowed to continue to practice law.

Respondent submitted an affidavit from his treating psychiatrist, Dr. Steude. Dr. Steude began treating respondent in August 2008 and diagnosed him with Major Depressive Disorder. Dr. Steude stated that with medication and therapy, respondent's depression has gone into remission. He noted respondent has been cooperative, interactive and honest during his treatment. Dr. Steude opined that respondent's personal and marital issues, although not fully resolved, should have "minimal impact, if any, on his ability to competently practice law."

### Aggravating Circumstances / Previous Disciplinary History

The Panel considered two aggravating circumstances: (1) respondent's pattern of not responding and/or cooperating with ODC regarding these five matters; and (2) his prior disciplinary history regarding a finding of minor misconduct in 2006 for failure to respond which resulted in a letter of caution.

In addition, respondent has the following additional disciplinary history. On February 3, 2004, respondent was suspended by the CLE Commission; he was reinstated on February 4, 2004. On April 2, 2008, he was again suspended by the CLE Commission; he was reinstated on April 18, 2008. He was placed on interim suspension on June 24, 2008. On April 2, 2009, he was suspended by the CLE Commission.

### DISCUSSION

The authority to discipline attorneys and the manner in which the discipline is given rests entirely with this Court. *In re McFarland*, 360 S.C. 101, 600 S.E.2d 537 (2004); *In re Long*, 346 S.C. 110, 551 S.E.2d 586 (2001). Under the Rules for Lawyer Disciplinary Enforcement (RLDE), respondent is in default, and therefore, he is deemed to have admitted all factual allegations of the formal charges. *See* Rule 24 RLDE, *in* Rule 413, SCACR. The charges of misconduct against respondent likewise are deemed admitted, and thus, the Court must only determine the appropriate sanction. *E.g.*, *Matter of Thornton*, 327 S.C. 193, 489 S.E.2d 198 (1997).

Based on the facts of the five matters outlined above, we find respondent violated the following Rules of Professional Conduct (RPC), found in Rule 407, SCACR:

- Rule 1.1—Competence
- Rule 1.2—Scope of Representation
- Rule 1.3—Diligence
- Rule 1.4—Communication
- Rule 1.15(d)—Safekeeping of Property
- Rule 1.16(d)—Declining or Terminating Representation
- Rule 3.2—Expediting Litigation

- Rule 8.1(b)—Bar Admissions and Disciplinary Matters
- Rule 8.4(a) & (e)—Violation of RPC and Conduct Prejudicial to the Administration of Justice

In addition, we find respondent violated Rule 7(a) of the Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR, including:

- Rule 7(a)(1) (violating a Rule of Professional Conduct)
- Rule 7(a)(3) (knowingly fail to respond to a lawful demand from a disciplinary authority)
- Rule 7(a)(5) (conduct tending to pollute the administration of justice or to bring the legal profession into disrepute)
- Rule 7(a)(6) (violating the oath of office taken to practice law in South Carolina)
- Rule 7(a)(10) (willfully failing to comply with a final decision of the Resolution of Fee Disputes Board)

ODC argues that respondent's pattern of not responding and not cooperating with ODC, combined with respondent's misconduct, warrant a definite suspension of greater than six months. We agree. *See In re Sturkey,* 376 S.C. 286, 657 S.E.2d 465 (2008) (where attorney failed respond to charges related to eight matters in criminal cases, the Court imposed a nine-month definite suspension, with participation in a law office management program and payment of costs); *In re Conway,* 374 S.C. 75, 647 S.E.2d 235 (2007) (where attorney, *inter alia,* failed to pay court reporter, failed to safeguard client files, and failed to respond to charges, this Court accepted an agreement for a definite suspension of nine months); *In re Cabaniss,* 369 S.C. 216, 632 S.E.2d 280 (2006) (where attorney *inter alia* neglected or performed less than competently on nine client matters, the Court accepted an agreement for a twelve-month suspension, retroactive to the date of respondent's interim suspension).

Accordingly, we impose a nine-month definite suspension as a sanction for respondent's misconduct. The definite suspension shall be retroactive to respondent's interim suspension. We further impose all the additional conditions recommended by the Panel, i.e., restitution, as well as 24 months of mentoring and counseling. We order respondent to pay the costs of

388

these disciplinary proceedings to the Commission on Lawyer Conduct within 30 days of the date of this opinion.

**DEFINITE SUSPENSION.**

TOAL, C.J., WALLER, PLEICONES, BEATTY and KITTREDGE, JJ., concur.