733 S.E.2d 897

**In the Matter of Eleazer R. CARTER, Respondent.**

Appellate Case No. 2012–211406.

No. 27179.

Supreme Court of South Carolina.

Heard Sept. 20, 2012.

Decided Oct. 10, 2012.

Disciplinary Counsel Lesley M. Coggiola and Deputy Disciplinary Counsel Barbara M. Seymour, both of Columbia, for Office of Disciplinary Counsel.

Eleazer R. Carter, of Manning, pro se.

PER CURIAM.

The Office of Disciplinary Counsel (ODC) filed formal charges against Eleazer Carter for alleged misconduct that occurred during his representation of Stacey Daniels in a civil suit. Following a hearing, a Panel from the Commission on Lawyer Conduct found Carter violated five rules of professional conduct, and accordingly recommended he receive an admonition, pay the costs of the proceedings, and complete the Legal Ethics and Practice Program's Ethics School within six

months. Neither ODC nor Carter took exceptions to the Panel's findings or recommendations. Nevertheless, we find a greater sanction is warranted and publicly reprimand Carter.

## FACTUAL/PROCEDURAL BACKGROUND

In September 2008, Stacey Daniels engaged legal counsel and filed a civil lawsuit arising from a car accident. However, counsel was relieved by consent in May 2009, and Daniels subsequently contacted Carter seeking representation. Daniels met with Carter at his office, and they discussed the fee arrangement, prior settlement offers, authorization for medical records, and possible witnesses if the case went to trial.[1] At the time, discovery and some settlement negotiations had already taken place.

In September 2009, Daniels attended a roster meeting for his case. Although Carter was not present, Daniels informed the circuit judge Carter was representing him. Carter happened to be at the courthouse on another matter and was brought to the meeting where he confirmed to the judge and opposing counsel he was representing Daniels. The judge continued the case until the next term of court.

When the case appeared on the roster in March 2010, Carter again failed to appear, although Daniels was present. Opposing counsel moved to dismiss the case, but the judge again continued it until the next term. The following month, the defendant served Carter with notice of the deposition of Daniels,[2] but Carter never informed Daniels of the date, and neither Daniels nor Carter attended the deposition. Additionally, Carter never told opposing counsel he would not be at the deposition or that he was not representing Daniels. Opposing counsel subsequently moved to dismiss the case for failure to prosecute, and when the case came up again for trial, the

---

1. Daniels alleges he signed the fee agreement at this initial meeting, but was never given a copy. Carter maintains Daniels never signed the agreement and took the blank form when he left.

2. The testimony on the scheduling of this deposition is conflicting. Counsel for the defendant testified that his secretary scheduled the deposition with Carter personally. Carter stated he did not recall that conversation taking place, although he admitted she may have talked to someone in his office.

judge called Carter and informed him the case was going forward. Carter knew Daniels was incarcerated when he received the motion, but he never contacted him about it. Carter argued the motion to dismiss, during which he informed the court he was not representing Daniels. The case was ultimately dismissed. Upon receipt of the order of dismissal, Carter forwarded it to Daniels with a handwritten note stating the case had been dismissed because they had not appeared in court. Daniels subsequently filed a grievance with the Commission on Lawyer Conduct.

At the hearing before a Panel from the Commission, Carter argued he had never been representing Daniels because Daniels never signed his fee agreement. Alternatively, he contended that if he was Daniels' lawyer, he represented him diligently. Based on the foregoing facts, the Panel found Carter in violation of Rules 1.2, 1.3, 1.4, 1.16, and 8.4(e), RPC, Rule 407, SCACR. In determining the proper sanction, the Panel considered Carter's extensive disciplinary history in aggravation. Carter was admitted in 1989. In January 2002, he received a letter of caution with a finding of minor misconduct citing Rules 1.1 (competence), 1.3 (diligence), 1.15 (safekeeping of property), 8.1(a) (cooperation with disciplinary investigation), RPC and Rule 417, SCACR (financial recordkeeping). Shortly thereafter in July 2002, Carter received another letter of caution finding minor misconduct under Rule 1.16(b) (declining or terminating representation). In July 2008—around the time he began representation of Daniels—he received another letter of caution citing misconduct under Rules 1.5 (fees), 8.4(e) (conduct prejudicial to the administration of justice), RPC and Rule 416, SCACR (failure to comply with decision of Resolution of Fee Disputes Board). Finally, Carter received two letters of caution in May 2010 with findings of minor misconduct under Rules 1.3 (diligence), 1.4 (communication), 5.3 (supervision of nonlawyers), 8.1(b) (cooperating with disciplinary investigation), and 8.4(e) (conduct prejudicial to the administration of justice).

The Panel therefore recommended Carter receive an admonition, pay the cost of the proceedings, and complete the Legal Ethics and Practice Program's Ethics School within six months of the Court's order.

## LAW/ANALYSIS

 Neither party took exception to the Panel Report; thus, the parties are deemed to have accepted the Panel's findings of fact, conclusions of law, and recommendations. Rule 27(a), RLDE, Rule 413, SCACR. Nevertheless, "[t]his Court has the sole authority to discipline attorneys and to decide the appropriate sanction after a thorough review of the record." *In re Thompson*, 343 S.C. 1, 10, 539 S.E.2d 396, 401 (2000). The Court may make its own findings of fact and conclusions of law; however, although it is not bound by the findings of the Panel, the Court gives great deference to its findings. *In re White*, 378 S.C. 333, 340–41, 663 S.E.2d 21, 26 (2008).

 The initial issue is whether Carter formed an attorney-client relationship with Daniels giving rise to his duty to comply with the Rules of Professional Conduct. Carter contended that he was not representing Daniels because they had no written fee agreement and the Rules of Professional Conduct—as well as opinions of this Court—require a signed agreement when, as here, the fee is on a contingent basis. Technically, Carter's argument is correct. *See* Rule 1.5(c), RPC, Rule 407, SCACR ("A contingent fee agreement shall be in a writing" signed by the client. . . .); *see also In re Atwater*, 355 S.C. 620, 621, 586 S.E.2d 589, 590 (2003) (publicly reprimanding attorney who failed, *inter alia*, to maintain a signed copy of a fee agreement with a client); *In re McDonough*, 348 S.C. 197, 198, 559 S.E.2d 832, 832 (1996) (disbarring lawyer for violations including failing to obtain a written copy of contingency fee agreement). However, Rule 1.5 and our opinions sanctioning lawyers for violation of this rule are designed to protect clients from inadequate representation, not to determine the presence of an attorney-client relationship. Moreover, we have also held that the existence of a retainer is not in and of itself dispositive of whether an attorney is representing a client. *See In re Broome*, 356 S.C. 302, 315, 589 S.E.2d 188, 195–96 (2003) ("[A] signed retainer agreement is not essential to create [an attorney-client] relationship."). Instead, a person can be deemed a client when he seeks legal advice and discusses those matters with a lawyer in confidence for the purpose of obtaining such advice. *Id.*

The Panel concluded, and we agree that Daniels had reason to believe Carter was representing him. Daniels and Carter had discussed both the possibility of settlement and how to proceed if they instead went to trial. Carter obtained medical releases from Daniels to procure evidence and made calls to the insurance adjuster on Daniels' behalf. Furthermore, Carter informed the judge at a roster meeting that he was representing Daniels. We therefore hold Carter established an attorney-client relationship with Daniels and was therefore obligated to comply with the Rules of Professional Conduct.

## I. SCOPE OF REPRESENTATION AND DECLINING OR TERMINATING REPRESENTATION

██ Pursuant to Rule 1.2, an attorney must "abide by a client's decisions concerning the objectives of representation . . . [and] consult with the client as to the means by which they are to be pursued." Here, Carter failed to pursue *any* objective by neither attempting to settle the case nor adequately preparing for trial. He also failed to reasonably consult with Daniels as to how he wanted his case resolved. Although he knew Daniels was incarcerated when he received the motion to dismiss, he never contacted Daniels or arranged to have him present at the hearing to determine how he wished to proceed.

██ Furthermore, Rule 1.16(c) requires a lawyer to provide "notice to or permission of a tribunal when terminating a representation" and Rule 1.16(d) requires a lawyer to "take steps to the extent reasonably practicable to protect a client's interests." Although both the judge and opposing counsel had been led to believe Carter was representing Daniels, Carter waited until the hearing on the motion to dismiss to inform them he was not. Carter's concerns about representing Daniels without a signed fee agreement may have been justified; however, that does not alleviate his responsibility to clearly inform the court and his client that the relationship had been terminated. Instead, Carter allowed the case to be dismissed for failure to prosecute and did not give Daniels prior notice that the motion had been filed. Furthermore, he did not return Daniels' file to him to allow him the opportunity to

obtain different counsel or proceed pro se.[3] We therefore agree with the Panel that Carter violated both Rules 1.2 and 1.16.

## II. DILIGENCE

■ Rule 1.3 requires a lawyer to act with reasonable diligence and promptness in representing a client. Even though Carter received notice of Daniels' scheduled deposition, he never told Daniels about it. Additionally, Carter did not inform opposing counsel that he would not attend. After receiving the defendant's motion to dismiss, Carter did not file anything in response, and it appears he would not have attended the hearing if the judge had not called him. Furthermore, he neither told Daniels, who was incarcerated at the time, about the motion, nor arranged to have Daniels present at the hearing.

Although Daniels' case seemed relatively simple and Carter began representation after settlement discussions had begun, no settlement was ever obtained nor was Carter ever prepared to take the case to trial. Carter was aware Edgefield County had limited terms of court, but he did not monitor the docket and failed to voluntarily attend the roster meetings. Accordingly, we agree with the Panel that Carter failed to diligently represent Daniels in violation of Rule 1.3.

## III. COMMUNICATION

■ Although Carter met with Daniels at least twice and spoke on the phone with him several times, the Panel nevertheless found he violated Rule 1.4, noting that it appeared Daniels had initiated all communication. Rule 1.4 requires an attorney to "reasonably consult with the client" and "keep the client reasonably informed about the status of the matter." Carter failed to keep Daniels apprised of the progress of the case. He did not inform Daniels of his scheduled deposition, never contacted Daniels while he was incarcerated to discuss how he wished to proceed with his case, and never notified

---

3. As of the date of the hearing before the Panel, Carter was still in possession of Daniels' file and did not bring it the hearing. ODC informed the Court at oral arguments that Carter did not return Daniels file until March 2012.

Daniels that the case was likely to be dismissed. Furthermore, when informing Daniels the case had been dismissed, he merely forwarded the order with a handwritten note to Daniels' home address despite knowing Daniels was incarcerated at the time.

Additionally, Rule 1.4 requires that a lawyer "consult with the client about any relevant limitation on the lawyer's conduct." Carter never clearly indicated to Daniels that his representation was contingent on the fee agreement being signed and that the absence of the agreement precluded him from representing Daniels.[4] Instead, Carter simply carried out a haphazard representation. Accordingly, we agree with the Panel that Carter violated Rule 1.4.

## IV. CONDUCT PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE

The Panel also concluded Carter engaged in conduct prejudicial to the administration of justice in violation of Rule 8.4(e). Carter began representation of Daniels after the pleadings had been filed and some settlement discussions had already taken place. Nevertheless, he failed to advance the case during the fifteen months when he represented Daniels. Although the case came up three separate times on the roster, he either failed to show up or was unprepared to move forward, and the case was eventually dismissed. Despite knowing that his client was incarcerated and would only have a limited period of time within which to re-file his case, Carter chose to communicate the dismissal of the case by forwarding the order along with a handwritten note to Daniels' home address. We therefore agree with the Panel that Carter's conduct was prejudicial to the administration of justice, and therefore, he violated Rule 8.4(e).

## V. SANCTION

We accept the Panel's recommendations ordering Carter to pay the costs of these proceedings and complete Ethics School. However, although the Panel recommends an admonition, we find, based on Carter's conduct, his disciplin-

---

4. We note Daniels testified that he signed a fee agreement, but was never given a copy.

ary history, and the concerning fact that some of letters of caution came so close in time to his representation of Daniels, a more severe sanction is warranted. We therefore hold a public reprimand is appropriate under these circumstances. *See In re DePew,* 350 S.C. 265, 267, 565 S.E.2d 305, 306 (2002) (publicly reprimanding attorney for violating rules regarding competency, diligence, communication, and engaging in conduct prejudicial to the administration of justice); *Matter of Barnes,* 325 S.C. 148, 149, 480 S.E.2d 452, 452 (1997) (issuing public reprimand where attorney violated rules concerning diligence, communication, and engaging in conduct prejudicial to the administration of justice); *Matter of Hart,* 321 S.C. 272, 272, 468 S.E.2d 76, 76 (1996) (publicly reprimanding attorney for failing to provide competent representation, abide by clients decisions, act diligently in representation, reasonably communicate with client, and protect clients' interests upon withdrawal of representation); *Matter of Ledford,* 317 S.C. 177, 178, 452 S.E.2d 605, 606 (1994) (determining attorney's conduct warranted public reprimand where attorney failed to represent clients competently, communicate with clients, and cooperate with the Board of Commissioners on Grievances and Discipline, and also engaged in conduct prejudicial to the administration of justice).

## CONCLUSION

Accordingly, we find Carter violated Rules 1.2, 1.3, 1.4, 1.16, and 8.4(e) of the Rules of Professional Conduct. Based on the facts of this case as well as Carter's extensive previous disciplinary history, we hold the misconduct warrants a public reprimand. Additionally, Carter is to pay the costs of these proceedings within thirty days and complete the Legal Ethics and Practice Program's Ethics School within six months of the issuance of this opinion.

**PUBLIC REPRIMAND.**